## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHASE WHITE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:   2:14-cv-01436-RDP** |
| | } | |
| **JRHBW REALTY, INC.,** *d/b/a RealtySouth*, | } | |
| **TITLESOUTH, LLC,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on TitleSouth's Motion to Dismiss Plaintiff's Amended Complaint With Prejudice.   (Doc. # 48).   The Motion has been fully briefed.   (Docs. # 51, 52).

**I.      Background**

In 2011, Plaintiff contacted a real estate sales agent for real estate broker JRHBW Realty, Inc. d/b/a RealtySouth ("RealtySouth"), named Diane Gray to discuss purchasing a home. On May 12 or 13, 2011, Gray showed Plaintiff a property on Powell Avenue which she had listed for sale. Gray represented the seller at that time, Gloria Harris.   (Doc. # 25, Stipulation of Facts, ¶ 1).

On or about May 13, 2011, Plaintiff met Gray and discussed the Powell Avenue property. At that meeting, Gray presented Plaintiff with a packet of documents including a Buyer Agency Agreement and an Affiliated Business Arrangement Disclosure Statement. Plaintiff executed the documents presented by Gray.   Plaintiff made an offer on the Powell Avenue property which was accepted the same day.   (Doc. # 25 ¶¶ 2-5).

Although the contract was accepted, Plaintiff and Harris did not close on the property within a year.   On June 12, 2012, Plaintiff again met with Gray and signed a new Buyer Agency

Agreement and an Affiliated Business Arrangement Disclosure Statement. (Doc. # 25 ¶¶ 6-14). In July 2013, Plaintiff obtained financing, and the parties closed on his purchase of the Powell Avenue property on July 25, 2013.   (Doc. # 25 ¶  15).

After Plaintiff and Harris first went under contract on the Powell Avenue Property in 2011, Gray did not show Plaintiff any other properties, and Plaintiff did not make an offer on any other property.   (Doc. # 25 ¶  22).

The HUD-1 for Plaintiff's purchase of the Powell Avenue property reflects that title insurance was obtained through RealtySouth's affiliate, TitleSouth, and that TitleSouth's fees were paid from the "Borrower's" funds at closing.   The HUD-1 identifies Plaintiff as the Borrower.   (Doc. # 25 ¶  18).   The HUD-1 reflects that Hornsby & Dabbs, L.L.C. acted as the Settlement Agent.   (Doc. # 25 ¶  19).

## II.     Standard of Review

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a).   However, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).   The complaint must include enough facts "to raise a right to relief above the speculative level."   *Twombly*, 550 U.S. at 555.   Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]"

2

without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.   To be plausible on its face, the claim must contain enough facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.

## III.   Analysis

Plaintiff's Amended Complaint alleges that TitleSouth violated sections 8(a) and 8(c) of the Real Estate Settlement Procedures Act ("RESPA") because RealtySouth steered business to TitleSouth.  (Doc. # 47).   Plaintiff made similar allegations in his original complaint.  (Doc. # 1, at ¶ 6).   The Amended Complaint alleges that, because TitleSouth and RealtySouth are both owned by the same parent company, the parent realizes increased "earnings, equity, and/or other consideration" as a result of the referrals to TitleSouth.  (Doc. # 47 at ¶ 21).   Plaintiff has also added allegations, which were not present in his original Complaint, that RealtySouth (no longer a defendant here) pays additional compensation to its brokers who steer business to affiliate TitleSouth.  (Doc. # 47 at ¶ 15-21).

"Congress enacted RESPA, in part, to eliminate 'kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services.'"  *Galiano v. Fidelity Nat. Title Ins. Co.*, 684 F.3d 309, 313-14 (2nd Cir. 2012) (quoting 12 U.S.C. § 2601(b)(2)).   "RESPA § 8(a) prohibits kickbacks for referrals of real estate settlement business."  *Galiano*, 684 F.3d at 314 (citing RESPA § 8(a), 12 U.S.C. § 2607(a); *Freeman v. Quicken Loans, Inc*., 132 S.Ct. 2034, 2038 (2012); *Cohen v. JP Morgan Chase & Co*., 498 F.3d 111, 121 (2d Cir. 2007)).   "A violation of § 8(a) involves three elements: (1) a payment or thing of value; (2) given and received pursuant to an agreement to refer settlement business; and (3) an actual referral."  *Galiano,* 684 F.3d at 314 (citing *Egerer v. Woodland Realty, Inc*., 556 F.3d 415, 427 (6th Cir. 2009); *see also Culpepper v.*

3

*Irwin Mortg. Corp*., 491 F.3d 1260, 1265 (11th Cir. 2007)).

Although Plaintiff's Amended Complaint alleges that TitleSouth and RealtySouth are affiliates, they are owned by the same parent holding company, and that the parent profits when TitleSouth is profitable.   But the Amended Complaint still fails to allege (1) a payment or thing of value (2) given by Defendants and received by Plaintiff's title agent (TitleSouth).   *See* RESPA § 8(a), 12 U.S.C. § 2607(a).   Without an allegation alleging that TitleSouth received a thing of value as part of a kickback scheme, Plaintiff's Amended Complaint fails to plausibly state a claim under Section 8(a) of RESPA.

Plaintiff's Amended Complaint makes the allegation that certain unlawful payments have been made.   However, the alleged payments consist of additional compensation from RealtySouth to its own brokers.   (Doc. # 47 at ¶ 15).   Plaintiff has not alleged the payment of any "thing of value" to or by TitleSouth, the sole defendant here, for the referral of business.   (*See generally*, Doc. # 47).   Where a complaint alleges a kickback scheme "in a wholly conclusory and speculative manner," it is properly dismissed.   *Galiano*, 684 F.3d at 315.   There must be some connection between the thing of value given and received and the agreement to refer business to allege a violation of RESPA.   *Galiano*, 684 F.3d at 314.   The existence of a shared corporate parent does not establish this connection under Section 8(a).   Nor do allegations of additional compensation paid by RealtySouth to RealtySouth brokers serve to establish a violation of RESPA by TitleSouth.   Under the allegations of Plaintiff's Amended Complaint, TitleSouth was neither the giver nor the recipient of any alleged kickback.   Therefore, Plaintiff has failed to plausibly allege a violation of Section 8(a) by TitleSouth.

Plaintiff's Amended Complaint also alleges a separate cause of action against TitleSouth under Section 8(c)(4).   Defendant argues that Section 8(c)(4) provides an exemption for affiliated business associations rather than a separate cause of action.   Courts addressing the question are divided on this issue.  *Compare Carter v. Welles-Bowen Realty, Inc*., 736 F.3d 722, 725-26 (6th Cir. 2013) ("the safe harbor provisions spelled out in § 2607(c)(4)"); *Galiano*, 684 F.3d at 314 (referring to Section 8(c) as a "safe harbor provision") *with Minter v. Wells Fargo Bank, N.A.*, 924 F.Supp.2d 627, 630-31 (D. Md. 2013) (the language of the statute implies that ABAs not in compliance with the three conditions of Section 8(c)(4) are violations of RESPA).   However, contrary to Plaintiff's argument, there is no binding precedent from the Eleventh Circuit on this issue, although one District Court in the Circuit has concluded that Section 8(c)(4) provides a separate cause of action.  *Bolinger v. First Multiple Listing Service, Inc.*, 838 F.Supp.2d 1340, 1354 (N.D. Ga. 2012).

TitleSouth argues that, whether or not Section 8(c)(4) provides a separate cause of action, it falls within the Section 8(c)(4) safe harbor as to both of Plaintiff's claims.   Plaintiff disagrees.

Section 8(c)(4) states, in pertinent part:

> Nothing in this section shall be construed as prohibiting ... (4) affiliated business arrangements so long as (A) a disclosure is made of the existence of such an arrangement to the person being referred and, in connection with such referral, such person is provided a written estimate of the charge or range of charges generally made by the provider to which the person is referred ... (B) such person is not required to use any particular provider of settlement services, and (C) the only thing of value that is received from the arrangement, other than the payments permitted under this subsection, is a return on the ownership interest or franchise relationship....

Under Section 8(c)(4), an affiliated business entity is not liable under Section 8(a) (or Section 8(c)(4)), where (1) it properly discloses "the existence of [the affiliated business] arrangement" and provides a "written estimate of the charge or range of charges imposed" by the affiliated

5

business entity; (2) the person being referred is not required to use any particular service as a condition precedent to the availability of another service; and (3) no payments other than a return on ownership interest or payments otherwise permitted under RESPA may be received under the affiliated business arrangement. *Spicer v. Ryland Group, Inc.*, 523 F.Supp.2d 1356, 1360 (N.D. Ga. 2007), *aff'd*, 294 Fed.Appx. 434 (11th Cir. 2008); *Toldy v. Fifth Third Mortg. Co.*, 721 F.Supp.2d 696, 710 (N.D. Ohio 2010).

Rather than argue either that the relationship between TitleSouth and RealtySouth does not satisfy the safe harbor conditions or that its disclosure did not contain the required elements, Plaintiff argues that, under 12 C.F.R. § 1024.15(1), unless the ABA disclosure form uses the "exact" format set forth in Appendix D to Regulation X, a defendant is not entitled to the exemption.   The court disagrees.   "[S]trict technical compliance with 24 C.F.R. § 3500.15(b)(1) and Appendix D is not required … ."   *Toldy*, 721 F.Supp.2d at 710.   The question, therefore, is whether, despite technical deviations from Appendix D, the ABA disclosure provided by RealtySouth complied with Section 8(c)(4) because it adequately fulfilled the purpose of the disclosure requirements.   *See Toldy*, 721 F.Supp.2d at 710.

Plaintiff does not contend that any required information was substantively withheld, and it is undisputed that the ABA Disclosure Form he received from RealtySouth contained the required disclosures.   RealtySouth disclosed its affiliated business arrangement with TitleSouth and its other affiliates, it set forth an estimate of range of charges by the affiliates, it allowed Plaintiff to reject the referrals to its affiliated businesses, and it disclosed that RealtySouth and its parent may benefit financially if their affiliates are used for settlement services.   (Doc. # 25-5).   It stated specifically, "Of course, you are under no obligation to use our affiliates for the services they offer.

6

You may be able to obtain the services at lower rates by shopping with other providers … ."
(Doc. # 25-5).   Moreover, someone other than affiliate TitleSouth Closing Centers handled the
closing.   (Doc. # 15-18, Box H; Doc. # 25 ¶ 19).   Based on these facts, this court cannot say that
the effectiveness of the disclosure was impaired in any way because it was not in the exact form of
Appendix D to Regulation X.   Therefore, TitleSouth qualifies for the Section 8(c)(4) safe harbor
provision. *See Carter*, 736 F.3d at 726.

For all these reasons, the court concludes that TitleSouth's Motion to Dismiss is due to be
granted.   A separate order will be entered.

**DONE** and **ORDERED** this September 16, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE